UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

REGINALD D. SLEDGE,
    Plaintiff,

v.

SGT. CURT STOLDT, ET AL.,
    Defendants.

CIVIL ACTION NO.
3:03cv2086 (SRU)

# RULING ON DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

This dispute arises from defendants Curt Stoldt's and Tracy O'Connell's[1] (collectively "defendants" or "officers") warrantless arrest of the plaintiff Reginald D. Sledge inside Sledge's apartment, and their subsequent warrantless searches of, and seizures inside, the apartment. During the week of January 14, 2002, the defendants received a tip from a jailhouse informant that Sledge was involved in a bank robbery. Without applying for or obtaining a warrant, the defendants went to Sledge's apartment. After gaining access to the apartment, the defendants arrested Sledge and conducted several searches of Sledge's person and his property, both before and after obtaining consent to search. Sledge, acting *pro se*, filed a section 1983 claim alleging that his arrest, and the defendants' searches and seizures, violated his Fourth and Fourteenth Amendment rights. The defendants moved for summary judgment on several of Sledge's claims. For reasons that follow, the defendants' summary judgment motion is denied.

**I.**      **Background**

A reasonable jury could find, from the record evidence, the following facts to be true.

---

[1] In his complaint, Sledge also named Gordon Jones as a defendant. Jones filed his own summary judgment motion **(doc. #38)**, in which he argued that he is not liable for the alleged conduct because he was not present at Sledge's apartment during the defendants' search of Sledge's apartment, or during Sledge's arrest. I granted Jones's motion on October 12, 2006, and he is no longer a party to this action.

During the week of January 14, 2002, O'Connell interviewed Curtis Leggett, an inmate housed at the Hartford Correctional Center, about a bank robbery that occurred in East Hartford in October or November 2001. Leggett told O'Connell that a black male named Reggie, later identified as the plaintiff, committed the robbery. On January 17, 2002, O'Connell and Stoldt went to the Hartford Police Department to ask for assistance in locating Sledge because they considered Sledge to be a suspect in the robbery. The Hartford Police gave the defendants Sledge's address.

Without obtaining a search or arrest warrant, O'Connell and Stoldt proceeded to Sledge's apartment. When they arrived, they knocked on his front door. Without opening the door, Sledge asked for the officers' identities and O'Connell and Stoldt identified themselves. Sledge then replied "if you don't have a warrant, you aint coming in." O'Connell and Stoldt then went to one of Sledge's neighbor's apartments to ask if Sledge lived in the apartment.

The defendants then returned to Sledge's apartment and again announced their presence. This time, Patricia Lee, Sledge's girlfriend and cotenant, answered the door. Without obtaining Lee's consent,[2] O'Connell and Stoldt entered the apartment. O'Connell located Sledge in the bathroom and, at gunpoint, ordered him to come out into the kitchen. Sledge refused to identify himself and the officers handcuffed him and slammed him against the refrigerator. The officers removed Sledge's wallet from his back pocket to check for identification.[3] After informing Lee

---

[2] Defendants contend that Lee gave them her consent to enter the apartment. Sledge has, despite attempts, been unable to depose Lee or to obtain an affidavit from Lee, in part because he was, until recently, in prison. Nevertheless, Sledge himself was present on the day of the search and submitted a declaration claiming that Lee did not give her consent to enter his apartment. Sledge's declaration renders Lee's consent a disputed issue of material fact.

[3] Sledge, by affidavit, asserts that the defendants then immediately began searching his apartment. The defendants contend that they did not search until they moved Sledge to the next room. The timing of the searches is thus a disputed issue of fact.

not to say anything to the police, one of the officers began to choke Sledge, taunting, "you think you're so smart, don't you Reggie." The defendants assert that Sledge was being "verbally abusive to the officers" and "uncooperative."

The officers then moved Sledge from the kitchen to the living room and sat him down on the couch. Stoldt moved several laundry bags away from Sledge. When Stoldt dropped one of the bags on the floor, he heard a "thud." Stoldt turned the bag over and saw the butt end of a pistol. Stoldt also saw some money in another laundry bag. At that point, O'Connell asked Lee for consent to search the rest of the apartment. Lee signed a written consent form. During the ensuing search of Sledge's person and of his apartment, the officers allegedly found drugs, money, and a shoulder-strap bag that was used in the bank robbery.

On December 2, 2003, Sledge filed a complaint pursuant to 42 U.S.C. § 1983 in which he asserted three claims. First, he alleges that the defendants' warrantless arrest and searches inside his apartment violated his Fourth Amendment rights. Second, he alleges that the defendants' destruction and confiscation of his property violated his Fourteenth Amendment rights. Third, he alleges that the defendants violated his Fourteenth Amendment rights by using excessive force to detain him.

The defendants moved for summary judgment on several grounds. First, they assert that they had valid consent to enter, and to search, Sledge's apartment. Second, they argue that they never, in fact, arrested Sledge, but instead only effected an investigatory detention. Third, they argue that even if they did arrest Sledge, the arrest was supported by probable cause. Fourth, they argue that Sledge's Fourteenth Amendment property claims lack merit because Sledge failed to pursue other post-deprivation proceedings, and because their actions were not conscience-

shocking. Finally, the defendants argue that they are entitled to qualified immunity.[4]

## II. Standard of Review

In a motion for summary judgment, the burden is on the moving party to establish that there are no genuine issues of material fact and that he is entitled to a judgment as a matter of law. *See*; Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *SCS Communications, Inc. v. Herrick Co., Inc.*, 360 F.3d 329, 338 (2d Cir. 2004). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When ruling on a summary judgment motion, the court must construe the facts in the light most favorable to the nonmoving party and must resolve all ambiguities and draw all reasonable inferences against the moving party. *Id.* at 255; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970); *see also Aldrich v. Randolph Central School District*, 963 F.2d. 520, 523 (2d Cir. 1992) (court is required to "resolve all ambiguities and draw all inferences in favor of the nonmoving party"), *cert. denied*, 506 U.S. 965 (1992). Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849 (1991). *See also Suburban Propane v. Proctor Gas, Inc.*, 953 F.2d 780, 788 (2d Cir. 1992). Moreover,

---

[4] Sledge also raises other several claims in his pleadings on which the defendants have not moved for summary judgment. Specifically, Sledge asserts that the defendants violated his Fourth Amendment rights when they searched Sledge's person and portions of his apartment, including his laundry bags, before they obtained consent, and that Lee's consent was coerced. Sledge also alleges that the defendants violated his Fourteenth Amendment rights when they used excessive force to detain him. Because the defendants have not moved for summary judgment on these claims, they survive the instant motion.

> [t]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact. As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.

*Anderson*, 477 U.S. at 247-48.

### III. Discussion

#### A. Fourth Amendment Claims

Sledge asserts that the defendants' entry into his apartment to arrest him, and their subsequent searches and seizures inside his apartment, violated his Fourth Amendment right to be free from unreasonable searches and seizures. "At the very core of the Fourth Amendment stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion." *Payton v. New York*, 445 U.S. 573, 589-90 (1980) (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)). "It is axiomatic that the 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" *Welsh v. Wisconsin*, 466 U.S. 740, 748 (1984) (quoting *United States v. United States District Court*, 407 U.S. 297, 313 (1972)). The Fourth Amendment has "drawn a firm line at the entrance to the house." *Milner v. Duncklee*, 460 F. Supp. 2d 360, 367 (D. Conn. 2006). It is thus "a basic principle of Fourth Amendment law that searches and seizures inside a home without a warrant are presumptively unreasonable." *Payton*, 445 U.S. at 586 (quotations omitted); *see also Milner*, 460 F. Supp. 2d at 368 (noting that the primary purpose of the warrant requirement is to safeguard against intrusions into one's home by taking the finding of probable cause out of the hands of interested officers and putting finding in the hands of a detached, neutral judge or

magistrate).

In this case, it is undisputed that the defendants did not have a warrant to arrest Sledge or to search Sledge's person and his apartment, so the officers' arrest of Sledge and their searches of his apartment were presumptively unreasonable. The defendants argue, however, that they had valid consent to enter Sledge's apartment.[5]

The presumptive unreasonableness of a warrantless search or seizure inside a dwelling is overcome where "voluntary consent has been obtained, either from the individual whose property is searched . . . or from a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 181 (1990) (citations omitted). Although Sledge explicitly refused his consent to the defendants' entry into his apartment, the defendants contend that they obtained consent from Lee, Sledge's girlfriend and cotenant, to enter the apartment.[6] Sledge, by

---

[5] Defendants also contend that, once lawfully inside Sledge's apartment, their detention of Sledge was valid pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968). *Terry*, however, does not provide an exception to the requirement that an officer must obtain a warrant to enter an individual's home to detain the individual or arrest the individual. Moreover, Sledge disputes at least two factual premises upon which defendants base their *Terry* argument: (1) Sledge contends that the defendants were not lawfully present inside Sledge's apartment; and (2) Sledge contends that the officers conducted a custodial arrest, as opposed to a *Terry* stop. Finally, the *Terry* doctrine does not apply inside a home. *See United States v. Myers*, 308 F.3d 251, 258 (3d Cir. 2002) ("*Terry* has never been applied inside a home"); *United States v. Crapser*, 472 F.3d 1141, 1149 (9th Cir. 2007) ("*Terry* does not apply inside a home"); *but see Maryland v. Buie*, 494 U.S. 325 (1990) (holding that officers may conduct a limited protective sweep inside a home if the officers are executing an arrest warrant inside the home and have reasonable suspicion that an individual poses a threat to the officers that are present on the premises).

[6] Under current law, the defendants would not have had valid consent to enter Sledge's apartment. *See Georgia v. Randolph*, 126 S. Ct. 1515, 1528 (2006) ("a physically present inhabitant's express refusal of consent to a police search is dispositive as to him, regardless of the consent of a fellow occupant"). The Supreme Court, however, issued its decision in *Randolph* after the instant searches and seizures occurred. Because the *Randolph* rule was not clearly established at the time, the officers are entitled to qualified immunity from a *Randolph* claim. *See Johnson v. Weaver*, 2006 U.S. Dist. LEXIS 73344 *23-*30 (D. Ohio 2006).

declaration, vehemently denies the defendants' factual assertions and asserts that Lee did not affirmatively consent to the officers' entry before they barged into his apartment. Assuming that the officers entered Sledge's apartment without a warrant or valid consent, as I must for purposes of this motion, the warrantless entry into Sledge's apartment violated Sledge's constitutional rights. The defendants' motion for summary judgment on Sledge's Fourth Amendment claims thus fails.

    B.    <u>Qualified Immunity</u>

The defendants have claimed that they are entitled to qualified immunity. The doctrine of qualified immunity protects "government officials performing discretionary functions . . . from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). The doctrine is justified, in part, by the risk that the "fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (quotations omitted). Qualified immunity also protects a government official "if it was 'objectively reasonable' for him to believe that his actions were lawful at the time of the challenged act." *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995).

Again, assuming that the officers did not obtain consent before entering Sledge's apartment, they are not entitled to qualified immunity. There are few constitutional rights more clearly established than the right to be free from a search or seizure in one's own home in the absence of a warrant or in the absence of a well-delineated exception to the warrant requirement. *See Katz v. United States*, 389 U.S. 347, 357 (1967) ("Over and again this Court has emphasized

that the mandate of the [Fourth] Amendment requires adherence to judicial processes . . . and that searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment -- subject only to a few specifically established and well-delineated exceptions.") (citations omitted). In short, because Lee's consent is a disputed issue of material fact, the officers are not entitled to summary judgment based upon their qualified immunity defense.[7]

### C. Fourteenth Amendment Claims

Sledge alleges that the officers' seizure of his property, namely, the money, violated the due process clause of the Fourteenth Amendment because he did not give the officers his consent to take the items, nor did the officers have probable cause.

As an initial matter, I conclude that the officers had probable cause to believe the seized items were evidence of a crime. The officers were investigating a bank robbery. It cannot be seriously contended that money, bundled with bank wrappers, is not evidence of a bank robbery. *See Warden v. Hayden*, 387 U.S. 294, 307 (1967) (government agents may confiscate property if they have "probable cause . . . to believe that the evidence sought will aid in a particular apprehension or conviction"); *United States v. $557,933.89*, 287 F.3d 66, 81 (2d Cir. 2002) (it must be "immediately apparent that the object is connected with criminal activity"); *United States v. Barrios-Moriera*, 872 F.2d 12, 17 (2d Cir. 1989) ("Near certainty" of the object's criminal character is not necessary). Notwithstanding the Fourth Amendment issues mentioned in the preceding sections, once an officer has probable cause to believe an individual's property

---

[7] Even if Lee did give consent to enter, the defendants are not necessarily entitled to qualified immunity for their other actions inside Sledge's apartment.

is evidence of a crime, as the officers had here, the due process clause of the Fourteenth Amendment does not bar the officer from removing that property, nor does it require an officer to gain the individual's consent to confiscate the property.

In addition, to the extent that Sledge bases his Fourteenth Amendment claims on the damage to his property that the officers allegedly inflicted during the search, or on the state's failure to return his property, those claims also fail because Sledge has adequate post-deprivation state judicial remedies.  *See Malapanis v. Regan*, 335 F. Supp. 2d 285, 292-93 (D. Conn. 2004); Conn. Gen. Stat. § 54-33f; Conn. Gen. Stat. § 4-142.

## IV. Conclusion

Because Sledge's affidavit renders Lee's consent for the officers to enter Sledge's apartment a disputed issue of material fact, the defendants are not entitled to summary judgment on Sledge's Fourth Amendment claims, nor are they entitled to qualified immunity on those claims.  Because it was not necessary to obtain Sledge's consent to remove evidence from his apartment, the defendants are entitled to summary judgment on Sledge's Fourteenth Amendment claims.  Accordingly, defendants' motion for summary judgment **(doc. #37)** is **GRANTED in part and DENIED in part**.

In addition, Sledge has filed a motion to appoint counsel **(doc. #29)**.  That motion is **GRANTED**.  The court will endeavor to find counsel to represent Sledge at trial.

It is so ordered.

Dated at Bridgeport, Connecticut, this 29th day of March 2007.

                                                          /s/ Stefan R. Underhill
                                                             Stefan R. Underhill
                                                             United States District Judge